CONSUMERS GAS COMPANY, Appellant, v. THE ILLINOIS COMMERCE COMMISSION *et al.*, Appellees.

Fifth District   No. 5—86—0044

Opinion filed May 30, 1986.

Thomas W. Kelty, Stanley L. Morris, and Brian T. Otwell, all of Pfeifer & Kelty, P.C., of Springfield, for appellant.

Neil F. Hartigan, Attorney General, of Springfield (Hercules F. Bolos and Edward P. O'Brien, Special Assistant Attorneys General, and Gary A. Peters, of Governor's Office of Consumer Services, all of Chicago, of counsel), for appellees.

JUSTICE JONES delivered the opinion of the court:

Consumers Gas Company (hereinafter referred to as Consumers), a public utility engaged in the service of providing natural gas products, seeks direct appellate review of an administrative decision of the Illinois Commerce Commission (hereinafter referred to as Commission) pursuant to Supreme Court Rule 335 (87 Ill. 2d R. 335) and section 10—201(a) of the Public Utilities Act (Ill. Rev. Stat. 1985, ch. 111⅔, par. 10—201(a)) as amended by Public Act 84—617 and effective January 1, 1986. The Commission caused an order to be entered on December 11, 1985, denying Consumers' proposed rate increase and substituting its own rate structure in place of that advocated by Consumers. Consumers seeks a stay of this administrative order pending direct appellate review, and the Commission has filed a written response in opposition thereto. In addition, Consumers moves for an expedited decision of the merits of the appeal.

The facts as set forth in the administrative record and the pleadings before this court are as follows. On February 1, 1985, Con-

sumers filed an amended tariff (filed rate schedule sheets) calling for a general rate increase effective March 18, 1985. Also on February 1, 1985, Consumers Gas Company filed a motion for interim rate relief. An amended motion seeking interim relief was filed on February 8, 1985. On March 6, 1985, the Commission suspended the filed rate schedule sheets to and including June 30, 1985, so that it could inquire into the propriety and reasonableness of the proposed tariffs. On June 19, 1985, the filed rate schedule sheets were further suspended to and including December 30, 1985. Extensive hearings were conducted on these matters throughout the spring and summer at Springfield, and local hearings were conducted at Carmi. Written briefs were submitted by the parties, including the Carmi Chamber of Commerce, which was permitted to intervene, and the matter was taken under advisement. On December 11, 1985, the Commission entered a written order addressing all pending matters. In its final order, the Commission found that Consumers is a public utility engaged in the service of providing natural gas products in the Illinois counties of Edwards, White, and Gallatin and serves 5,700 customers. Extensive technical findings were made with respect to Consumers' original cost-rate base, its operating revenue and expenses, its capital structure and rate of return and its rate design. The Commission found that the proposed rate increase would produce a rate of return for Consumers in excess of what is fair and reasonable. Based upon the economic data before it, the Commission designed an alternative rate structure to permit Consumers "to maintain its financial integrity and attract capital at reasonable rates." The order provided, *inter alia*, for the following relief: (1) that the filed rate schedule sheets filed with the Commission on February 1, 1985, be permanently cancelled and annulled; (2) that Consumers be directed to file new tariff sheets in conformance with the rate structure adopted by the Commission (and set forth in the order); and (3) that Consumers modify its monthly uniform purchase gas clause filing factor to reflect a monthly demand charge of no more than 2,061 MCF and a monthly space charge of no more than 61,830 MCF.

Following this decision, Consumers and the Carmi Chamber of Commerce filed applications for rehearing and for reconsideration. In addition, Consumers sought a stay of the Commission's order. These motions were denied by the Commission pursuant to a written order entered on January 22, 1986. Consumers filed a notice of appeal with this court on January 23, 1986, and a similar notice of appeal with the Commission on January 24, 1986.

Consumers moves this court for a stay of the Commission's De-

cember 11, 1985, order pending appeal. Consumers alleges in support of its motion that a stay is necessary to maintain the status quo pending the court's resolution of the issues presented on appeal. In an affidavit of E. W. Pfeffer, president of Consumers, it is alleged that the rate structure proposed by the Commission would produce approximately $28,000 in increased revenue under the described tariff sheets and would produce a simultaneous decrease in revenue of approximately $65,000 annually through the operation of the uniform gas clause, the net result of which would be a loss of a sum in excess of approximately $3,000 per month. It is further alleged that in the event Consumers is successful on appeal and is permitted to file its proposed new tariff sheets and make modifications to its uniform gas clause, it is extremely unlikely that it would be allowed to recapture revenue shortfalls resulting from compliance with the Commission's rate structure during the pendency of the appeal.

The procedures for pursuing direct appellate review are governed by Supreme Court Rule 335. Because the procedures for perfecting an appeal as set forth in the amended Public Utilities Act do not mirror those set forth under the rule, it is necessary to determine which procedures control and whether adequate steps have been taken to vest this court with jurisdiction prior to addressing the motions for stay and to expedite the appeal.

The Commission in its response directs this court's attention to section 10—204 of the Act (Ill. Rev. Stat. 1985, ch. 111²/₃, par. 10—204) which is in substantially similar form to former section 71 of the Act (Ill. Rev. Stat. 1983, ch. 111²/₃, par. 75) with the exception that under the amended act the motion for stay is addressed to the appellate court. Paragraph (a) of section 204 provides that the pendency of an appeal shall not operate as a stay. Paragraph (b) provides that a stay may be granted only upon three days notice to the Commission and after a hearing on the matter. Moreover, the order granting a stay must contain specific factual findings based on the evidence presented at that hearing to the effect that great and irreparable damage would occur in the event that a stay were not granted. The Commission relies on *City of Chicago v. Illinois Commerce Com.* (1985), 133 Ill. App. 3d 435, 478 N.E.2d 1369, in asserting that an additional requirement for obtaining a stay of a Commission order pertaining to a public utility rate is that the proponent of the stay must make a showing of a likelihood of success on the merits of the appeal. In the event that the requirements discussed above are satisfied, paragraph (c) provides that the appellate court has the discretion to impose a bond in support of the stay.

A key provision of the amended Act is section 10—201, which provides for direct appellate review of any final order or decision of the Commission. Paragraph (a) provides in pertinent part:

"(a) Jurisdiction. Within 30 days after the service of any order or decision of the Commission refusing an application for a rehearing of any rule, regulation, order or decision of the Commission, including any order granting or denying interim rate relief, or within 30 days after the service of any final order or decision of the Commission upon and after a rehearing of any rule, regulation, order or decision of the Commission, including any order granting or denying interim rate relief, any person or corporation affected by such rule, regulation, order or decision, *may appeal to the appellate court of the judicial district in which the subject matter of the hearing is situated* \*\*\*." (Emphasis added.) (Ill. Rev. Stat. 1985, ch. 111⅔, par. 10—201(a).)

The specific procedures for perfecting an appeal are set forth under paragraph (b), which provides in pertinent part:

"The party taking such an appeal shall file with the secretary of the Commission written notice of the appeal. The Commission, upon the filing of such notice of appeal, shall, within 5 days thereafter, file with the clerk of the appellate court to which such appeal is taken a certified copy of the order appealed from and within 20 days thereafter the party appealing shall furnish to the Commission either a copy of the transcript of the evidence, including exhibits, or enter into a stipulation that only certain questions are involved, which transcript or stipulation is to be included in the record provided for in the Section 10—105. The Commission shall certify the record and file the same with the clerk of the appellate court to which such appeal is taken within 10 days of being furnished the transcript or stipulation. The parties serving such notice of appeal shall, within 5 days after the service of such notice upon the Commission, file a copy of the notice, with proof of service, with the clerk of the court to which such appeal is taken, and thereupon the appellate court shall have jurisdiction over the appeal." (Ill. Rev. Stat. 1985, ch. 111⅔, par. 10—201(b).)

Under this statutory scheme the perfection of an appeal requires a party to file a notice of appeal with the secretary of the Commission within 30 days after service of any final order or decision of the Commission or, if an application for rehearing or reconsideration is filed, within 30 days after service of any final order or decision of

the Commission disposing of such application. Within five days thereafter, the party seeking the appeal shall file with the clerk of the appellate court to which such appeal is taken a copy of the notice of appeal, with proof of service. This procedure creates some ambiguity with respect to the precise point in time at which the appellate court acquires jurisdiction. In a traditional appeal from a final judgment entered in the trial court, the appellate court is vested with jurisdiction upon the filing of the notice of appeal with the clerk of the circuit court. Under this statute, however, the appellate court apparently does not acquire jurisdiction until such time as the parties seeking the appeal provide the clerk of the court with a copy of the notice of appeal together with proof of service.

This statutory scheme is in direct contravention of Supreme Court Rule 335. Paragraph (a) of the rule requires that a petition for review shall be filed with the appellate court, unlike section 10–201(b) which requires that a notice of appeal shall be filed with the secretary of the Commission. Paragraph (b) of the rule requires that the petitioner seeking appellate review serve a copy of the petition for review on the administrative agency and all other parties of record. In contrast, under section 10–201(b) it is the clerk of the appellate court who is served with a copy of the notice of appeal which was filed with the Commission in the first instance.

The doctrine of separation of powers as delineated under our State constitution gives guidance in determining which procedure controls the perfection of a direct appeal to the appellate court from an order of the Commission. Article II, section 1, of the Illinois Constitution of 1970 provides as follows:

> "The legislative, executive and judicial branches are separate. No branch shall exercise powers properly belonging to another." (Ill. Const. 1970, art. II, sec. 1.)

This constitutional provision does not mandate that the exercise of power be rigidly compartmentalized among the branches of government such that one branch may not exercise powers constitutionally exercised by another; rather, it is intended to safeguard against the whole power of one branch being lodged in one or both of the remaining branches. (*City of Waukegan v. Pollution Control Board* (1974), 57 Ill. 2d 170, 311 N.E.2d 146.) In recognition of the fact that there is an overlap in the exercise of governmental powers, the legislature has been permitted to enact laws governing judicial practice where it does not unduly infringe upon the inherent powers of the judiciary. (*Strukoff v. Strukoff* (1979), 76 Ill. 2d 53, 389 N.E.2d 1170.) Nevertheless, courts jealously preserve their exclusive exercise

of judicial power conferred on them by article VI, section 1, of the Constitution. (*Agran v. Checker Taxi Co.* (1952), 412 Ill. 145, 105 N.E.2d 713; *People v. Brumfield* (1977), 51 Ill. App. 3d 637, 366 N.E.2d 1130.) The Constitution does not specifically define judicial power, but courts review contempt and judicial administration as inherent powers worthy of protection against legislative encroachment. (*In re Baker* (1978), 71 Ill. 2d 480, 376 N.E.2d 1005; *Agran v. Checker Taxi Co.* (1952), 412 Ill. 145, 105 N.E.2d 713; *People v. Jackson* (1977), 69 Ill. 2d 252, 371 N.E.2d 602.) With respect to matters of judicial administration, the supreme court has barred legislative attempts to regulate judicial procedures and practices where those attempts conflicted with existing supreme court rules. Examples of improper legislation include attempts to regulate jury selection (*People v. Jackson* (1977), 69 Ill. 2d 252, 371 N.E.2d 602), eligibility for bail pending appeal (*People ex rel. Stamos v. Jones* (1968), 40 Ill. 2d 62, 237 N.E.2d 495) and the standard for review of criminal sentences (*People v. Cox* (1980), 82 Ill. 2d 268, 412 N.E.2d 541). It is our belief that section 10—201 is but another improper legislative intrusion into the area of appellate practice by attempting to regulate the method for perfecting a direct appeal of an administrative decision. Therefore, to the extent its provisions conflict with Supreme Court Rule 335, we hold it unconstitutional.

■ As noted above, the notice of appeal in this case was filed in the appellate court on January 23, 1986, well within 30 days of the January 2, 1986, order disposing of the applications for reconsideration. If the court were to regard this notice of appeal as being synonymous with a petition for review, then the appeal has been perfected in a timely manner. Pursuant to paragraph (a) of the rule, a petition for review shall specify the party seeking review and designate the respondent and the order or part thereof to be reviewed. The specific form of the petition incorporating the necessary elements is provided in the rule. Here, the notice of appeal identifies Consumers as appellant and the Commission and the Carmi Chamber of Commerce as appellees. The notice also specifies the order under review and the relief sought. Inasmuch as the notice of appeal contains all of the essential information required of the petition for review, it is sufficient to vest this court with jurisdiction despite its deviation from the prescribed form of the petition for review.

■ Turning to the motion for stay, this court is again confronted with a conflict between a provision of the amended Act and Supreme Court Rule 335. As previously noted, section 10—204(b) specifies that before a stay may be granted, the Commission must receive

three days' notice of a hearing to be conducted on the matter. If, after the hearing, the appellate court elects to grant a stay, the stay order must include specific findings based on the evidence adduced at the hearing that great and irreparable damage would result were the request for a stay denied. However, Supreme Court Rule 335 contains its own provision with respect to obtaining a stay of an administrative order pending appeal. Paragraph (g) of the rule provides in pertinent part:

"A motion for stay may be made to the Appellate Court or to a judge thereof, but the motion shall show that application has been made to the agency and denied, with the reasons, if any, given by it for denial, or that application to the agency for the relief sought was not practicable. The motion shall also show the reasons for the relief requested and the facts relied upon, and if the facts are subject to dispute the motion shall be supported by affidavit. With the motion shall be filed such parts of the records as are relevant to the relief sought. Reasonable notice of the motion shall be given to all parties to the proceeding in the Appellate Court ***." (87 Ill. 2d R. 335(g).)

The principal distinction between section 10—204(b) and paragraph (g) is that the former requires that an evidentiary hearing be conducted on the motion for stay while the latter does not. Just as the legislature was prohibited from establishing eligibility requirements for admission to bail pending appeal (*People ex rel. Stamos v. Jones* (1968), 40 Ill. 2d 62, 237 N.E.2d 495), so too should it be prohibited from establishing procedures for obtaining an appeal bond from an administrative decision where a supreme court rule is already in place for that purpose. Application of the separation of powers doctrine requires that the procedures established under paragraph (g) should control. We note parenthetically that this court is an intermediate court of review and, as such, is ill equipped to conduct an evidentiary hearing as mandated by section 10—204(b). Therefore, we must dispose of the motion for stay on the basis of the pleadings and record before us in accordance with paragraph (g).

■ Turning to the merits of the motion for stay pending appeal, the motion is more striking by what it does not allege than by what it does. Although it is alleged by Consumers that the rate schedule drawn up by the Commission will produce a revenue decline and that it may not be possible to recapture lost revenue in the event the administrative decision is reversed on appeal, it is not alleged that the Commission acted in an arbitrary or capricious manner in rejecting Consumers' tariff and substituting its own, that the Commission's

decision is against the manifest weight of the evidence or that there is any likelihood of success on appeal. In short, Consumers has presented this court with nothing of substance to question the procedures or expertise of the Commission in arriving at its rather technical decision in this cause. Accordingly, the motion for stay is denied.

■■ Finally, Consumers moves for an expedited decision. In support of this request, the court's attention is drawn to section 10—201(e)(i) of the Act, which provides:

> "(e) Powers and duties of Reviewing Court:
>
> (i) An appellate court to which any such appeal is taken shall have the power, and it shall be its duty, to hear and determine such appeal with all convenient speed. Any proceeding in any court [of] this state directly affecting a rule, regulation, order or decision of the Commission, or to which the Commission is a party, shall have priority in hearing and determination over all other civil proceedings pending in such court, excepting election contests." (Ill. Rev. Stat. 1985, ch. 111²/₃, par. 10—201(e)(i).)

This section constitutes a serious and unwarranted legislative intrusion into the administrative powers of the court by attempting to assign legislative priorities within the court's docket. Thus, for example, under the strict meaning of this statute the court would be required to give priority to a rate case over a serious matter of custody that would involve endangerment to the health and welfare of children. This unwarranted intrusion into the court's power to control its docket is unconstitutional and will not serve as a basis for granting Consumer's motion to expedite. Accordingly, that motion is denied.

Motion for stay denied; motion to expedite appeal denied.

HARRISON and WELCH, JJ., concur.