# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

*Kreutzer v. Illinois Commerce Comm'n*, 2012 IL App (2d) 110619

---

| | |
|---|---|
| Appellate Court Caption | FRANCES KREUTZER, MARIE CARANCI, WILLIAM BYRNE, and LINDA BYRNE, Petitioners, v. ILLINOIS COMMERCE COMMISSION, COMMONWEALTH EDISON COMPANY, THE VILLAGE OF HUNTLEY, EXELON BUSINESS SERVICES COMPANY, NEUEMANN HOMES, INC., INDYMAC BANK, F.S.B., HOWARD E. REID, and THE VILLAGE OF GILBERTS, Respondents. |
| District & No. | Second District<br>Docket No. 2-11-0619 |
| Filed | November 30, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | On remand from the reversal of an order of the Illinois Commerce Commission granting respondent electric utility a certificate of public convenience and necessity for an electrical power line along petitioners' property, the Commission properly precluded petitioners from presenting additional evidence on the issue of whether the route for the line that was determined in the first proceeding was the best and the Commission's determination that the utility's modification of the dimensions of the easement it requested cured the evidentiary deficiency that resulted in the reversal was affirmed, since the appellate court's remand was narrow and did not allow petitioners to reargue the issue of the route selected. |
| Decision Under Review | Petition for review of order of Illinois Commerce Commission, No. 07-0310. |

Judgment         Affirmed.


Counsel on       Philip J. McGuire, of Law Offices of Patrick J. McGuire, P.C., of
Appeal           Chicago, and William M. Shay, of Peoria, for appellants.


                 James E. Weging, of Illinois Commerce Commission, of Chicago, for
                 appellee Illinois Commerce Commission.


                 Barry Levenstam, of Jenner & Block, LLP, of Chicago, and David W.
                 DeBruin and Matthew E. Price, both of Jenner & Block, LLP, of
                 Washington, D.C., for appellee Commonwealth Edison Company.


Panel            JUSTICE BIRKETT delivered the judgment of the court, with opinion.
                 Justices McLaren and Burke concurred in the judgment and opinion.

**OPINION**

¶ 1      This case comes before this court for the second time. In the prior proceeding, *Kreutzer v. Illinois Commerce Comm'n*, 404 Ill. App. 3d 791, 815 (2010) (*Kreutzer I*), we reversed the order of the Illinois Commerce Commission (Commission) granting respondent Commonwealth Edison Co. (ComEd) a certificate of public convenience and necessity for the construction of an electrical power line along Kreutzer Road, on which is situated the property of petitioners, Frances Kreutzer, Marie Caranci, William Byrne, and Linda Byrne. On remand, ComEd modified the dimensions of the easement it was seeking and the Commission determined that this change cured the evidentiary deficiency on which the reversal in *Kreutzer I* was based. The Commission rejected petitioners' attempt to introduce additional evidence on whether the Kreutzer Road route was superior to the other candidate routes, an issue that the Commission had determined in the first proceeding. The Commission reasoned that our reversal and remand in *Kreutzer I* was narrow and did not reopen the issue that petitioners attempted to reargue. The Commission reconfirmed the Kreutzer Road route with the modification that ComEd had made. Petitioners appeal, and we affirm.

¶ 2                              BACKGROUND
¶ 3      The backdrop is set forth in *Kreutzer I*, and we restate only what is necessary here. In May 2007, ComEd petitioned the Commission for a certificate of public convenience and

necessity for the installation of a new electrical transmission line in McHenry and Kane Counties, the latest phase in its Northwest Reliability Project. The first leg of the proposed line would begin at an existing electrical substation at Interstate 90 and Randall Road in Gilberts and run westward six miles along Interstate 90 to a new substation to be called the Sandwald substation. The second leg of the line would run north from Interstate 90, eventually reaching and running eastward along the south side of Kreutzer Road before ultimately connecting with an existing transmission line. The proposed line, known as the Kreutzer Road route, would pass through petitioners' property on Kreutzer Road.

¶ 4 A hearing on the petition occurred in 2007 and 2008. A Commission administrative law judge (ALJ) received prepared testimony from various witnesses comparing the Kreutzer Road route, which was endorsed by the Commission staff, to three other candidate routes: the "Freeman/Galligan" route, the "modified Freeman/Galligan" route,[1] and the "Main & Haligus" route. Exhibit B to ComEd's petition was a legal description of the Kreutzer Road route. The route was described as running "ALONG KREUTZER ROAD APPROXIMATELY 6,433.0 FEET TO THE INTERSECTION OF KREUTZER ROAD AND HUNTLEY ROAD," but the dimensions of the corridor along Kreutzer Road were not indicated. Ronald Dyslin, a real estate agent with ComEd, testified before the ALJ that ComEd was seeking a "50-foot right-of-way *** adjacent to the south edge of the current road right-of-way." In January 2008, the ALJ closed the proofs in the case. In July 2008, the ALJ filed a proposed order authorizing ComEd to install the transmission line along the proposed Kreutzer Road route. Appendix 1 to the proposed order adopted verbatim ComEd's Exhibit B. The ALJ then invited the parties to submit their briefs on exceptions. Petitioners subsequently filed a motion for the ALJ to take judicial notice of the fact that, on June 10, 2008, Kane County passed an ordinance designating petitioners' home on the south side of Kreutzer Road (Kreutzer House) as a historic landmark. Petitioners argued that the designation significantly impacted the desirability of the Kreutzer Road route. The ALJ denied the motion. In its brief on exceptions, ComEd suggested that it could minimize the impact on the Kreutzer House by locating the transmission line to the south side, or rear, of the house. ComEd attached as Appendix 1 to its brief a legal description that it claimed would allow it flexibility to situate the transmission line so as to preserve the aesthetics of the house. Appendix 1 modified the legal description in Exhibit B to state that the line would run "ALONG KREUTZER ROAD *WITHIN 175 FEET OF THE CENTERLINE OF THE ROAD RIGHT-OF-WAY FOR A DISTANCE OF* APPROXIMATELY 6,433.0 FEET TO THE INTERSECTION OF KREUTZER ROAD AND HUNTLEY ROAD." (Emphasis added.)

¶ 5 On October 8, 2008, the Commission adopted the recommendation of the ALJ and issued its "order and certificate of public convenience and necessity" for the construction of the proposed line along the Kreutzer Road route. The Commission applied the criteria of sections 8-406(b) and (d) of the Public Utilities Act (220 ILCS 5/8-406(b), (d) (West 2008)):

---

[1] The Village of Huntley suggested a modification to the original route so that it would avoid traversing the village.

"(b) No public utility shall begin the construction of any new plant, equipment, property or facility which is not in substitution of any existing plant, equipment, property or facility or any extension or alteration thereof or in addition thereto, unless and until it shall have obtained from the Commission a certificate that public convenience and necessity require such construction. Whenever after a hearing the Commission determines that any new construction or the transaction of any business by a public utility will promote the public convenience and is necessary thereto, it shall have the power to issue certificates of public convenience and necessity. The Commission shall determine that proposed construction will promote the public convenience and necessity only if the utility demonstrates: (1) that the proposed construction is necessary to provide adequate, reliable, and efficient service to its customers and is the least-cost means of satisfying the service needs of its customers or that the proposed construction will promote the development of an effectively competitive electricity market that operates efficiently, is equitable to all customers, and is the least cost means of satisfying those objectives; (2) that the utility is capable of efficiently managing and supervising the construction process and has taken sufficient action to ensure adequate and efficient construction and supervision thereof; and (3) that the utility is capable of financing the proposed construction without significant adverse financial consequences for the utility or its customers.

*** 

(d) In making its determination, the Commission shall attach primary weight to the cost or cost savings to the customers of the utility. The Commission may consider any or all factors which will or may affect such cost or cost savings."

¶ 6 In a detailed discussion, the Commission applied these criteria to each of the three candidate routes and concluded that the Kreutzer Road route best met the standards. Appendix 1 to the Commission's order was a verbatim copy of ComEd's Appendix 1, with the 175-foot right-of-way. The Commission granted ComEd authority to institute eminent domain proceedings as necessary to construct the route described in the Commission's Appendix 1.

¶ 7 In November 2008, petitioners filed an application for rehearing, in which the sole argument was that the evidence did not support the 175-foot range that the Commission, during the exceptions period, granted ComEd in the placement of the line. The Commission denied rehearing, and petitioners appealed. In *Kreutzer I*, we noted that petitioners made the following three arguments to us:

"First, they claim that the Commission erred when, after the proofs were closed, it authorized ComEd to align the transmission line within 175 feet of the centerline of Kreutzer Road, when ComEd's witnesses, such as Dyslin, indicated only that ComEd needed a 50-foot-wide right-of-way adjacent to Kreutzer Road. Relatedly, petitioners suggest that the Commission may have violated the Open Meetings Act (5 ILCS 120/1.01 *et seq.* (West 2008)) in that, given the late insertion of the reference to the 175-foot margin, 'there may have been input from some source other than the record.' Second, they argue that the Kreutzer Road route was not the least-cost route for the proposed line

-4-

in any case, and that the widening of the easement beyond that contemplated by ComEd's witnesses exacerbated the failure of proof. Third, they argue that the Commission was wrong to deny their request to take administrative notice of Kane Country's designation of the Kreutzer House as a historical landmark." *Kreutzer I*, 404 Ill. App. 3d at 808.

¶ 8 We determined that the sole argument petitioners preserved for appeal concerned the 175-foot easement:

"We agree with ComEd and the Commission that petitioners' argument for rehearing on the issue of the least-cost option was significantly narrower than the argument they now bring on the issue. We note first that petitioners did not question below, and do not question here, the general need for the transmission line. They challenge only the Commission's preferred layout for the line, the Kreutzer Road route. In arguing that specific point here, petitioners contend that the evidence before the Commission does not demonstrate that the Kreutzer Road route is the least-cost option either with a 50-foot corridor adjacent to Kreutzer Road, as Dyslin contemplated, or with the revised range of up to 175 feet from the centerline of Kreutzer Road. In their application for rehearing, however, petitioners objected only to ComEd's attempt to secure a right-of-way wider than 50 feet. Petitioners thus forfeited their challenge that the Kreutzer Road route was not the least-cost option, given a right-of-way of no wider than 50 feet adjacent to Kreutzer Road. Thus, we do not review whether the Kreutzer Road route was the least-cost option as laid out before the revision that ComEd prompted.

Petitioners also forfeited their argument that the Commission erred by declining to take administrative notice of the designation of the Kreutzer House by Kane County. In their application for rehearing, petitioners mentioned the Commission's denial of the motion but did not assign error to it." *Id.* at 809.

¶ 9 We then turned to "petitioners' one preserved contention, that there was no evidence before the Commission to demonstrate the need for a 175-foot right-of-way reckoned from the centerline of Kreutzer Road or, for that matter, any right-of-way more expansive than a 50-foot corridor adjacent to Kreutzer Road." *Id.* Reviewing the pertinent law, we held that an order from the Commission authorizing a utility to institute condemnation proceedings to make improvements must both "describe with reasonable certainty the portion of the property sought to be condemned" and "have an adequate evidentiary basis." *Id.* at 812.

¶ 10 Applying these criteria, we found two flaws in the Commission's allowance of the 175-foot right-of-way. First, the Commission's order "[did] not adequately describe the portion of property ComEd [was] authorized to seek." *Id.* at 813. The order "allow[ed] for placement of a transmission line of unidentified width within a range of well over 100 feet (even allowing for substantial width for the road right-of-way) on petitioners' property." *Id.* Second, "even if such an uncertain description were sufficient, the record [did] not support a margin of 175 feet from the centerline of Kreutzer Road (in whichever direction) rather than some other margin." *Id.*

¶ 11 At the conclusion of our analysis, we made the following comments regarding the relief to be granted:

"As to how to proceed from here, ComEd prefers that we simply direct the

-5-

Commission to delete the reference to the 175-foot width rather than 'remand for further proceedings on whether the 175-foot provision should be included.' The Commission, however, 'will accept remand to either hear evidence on the matter or to strike the 175 foot limitation out of the legal description.' Petitioners request a remand to 'reopen the hearing' but give no specifics.

We do not opt simply to have the 175-foot reference stricken. That would eliminate all measure of definiteness in the width of the right-of-way sought by ComEd and render the Commission's decision entirely out of compliance with the standards we set forth above. Notably, neither ComEd nor the Commission asks us to hold that the evidence at least supports a 50-foot right-of-way adjacent to Kreutzer Road, as described by Dyslin. We could not do so anyway because Appendix 1 to the Commission's order does not specify a 50-foot right-of-way. We simply remand this matter for further proceedings before the Commission, governed by the principles set forth above." *Id.* at 815.

Our judgment line read: "For the foregoing reasons, we reverse the decision of the Commission and remand this case for further proceedings consistent with this opinion." *Id.* The mandate, which issued on November 17, 2010, read:

"BE IT REMEMBERED, that, to wit: On the 16th day of September, 2010, a Decision of the aforementioned Court was entered of record and in accordance with the views expressed in the attached Decision the judgment of the [Commission] is Reversed and Remanded."

¶ 12        On remand, the Commission staff, ComEd, and petitioners all filed briefs recommending how the Commission should proceed. The Commission staff filed the first brief, and interpreted *Kreutzer I* as limiting the scope of the case on remand to the issue of the 175-foot right-of-way. Specifically, the staff interpreted our judgment and mandate as "remand[ing] the decision back to the Commission with directions to describe with reasonabl[e] certainty the amount of land it authorized ComEd to acquire[ ], and to be sure that description was supported by substantial evidence." According to the staff, petitioners had forfeited in *Kreutzer I*, and so could not raise on remand, any argument that the Kreutzer Road route did not meet the criteria of section 8-406, including any claim that the Kane County ordinance diminished the appeal of the Kreutzer Road route. (Here the Commission accurately interpreted our mandate.)

¶ 13        In its brief on remand, ComEd asserted that the reversal and remand in *Kreutzer I* was based on "one clearly defined issue," namely, the validity of the 175-foot easement. ComEd announced that it would now limit its request to a 50-foot easement, the dimension referenced by Dyslin in his testimony in the original proceeding. ComEd proposed that this modification would altogether eliminate the deficiency found in *Kreutzer I*, and so dispense with the need for further evidence on remand, as petitioners had not preserved for appeal in *Kreutzer I* any issue but the description of, and evidentiary support for, the 175-foot easement.

¶ 14        ComEd also represented in its brief that the first segment of the new transmission line, between the Gilberts and Sandwald substations, had been complete since 2009.

¶ 15        Petitioners argued for further proceedings on two principal grounds: changed law and

changed facts. First, as to changed law, petitioners maintained that our opinion in *Kreutzer I* substantially heightened the restrictions on a utility's ability to condemn land for improvements, and that, in light of these changes, the Commission should undertake "a thorough review and reconsideration of the certificate previously granted in the initial proceeding." Second, as to changed facts, petitioners observed that the housing industry had declined rapidly since the initial proceeding. Petitioners attached to their brief a document from the National Association of Home Builders (NAHB report) on "housing starts," which the document defines as "new residential construction" and "new residential sales." The document contains statistics on housing starts for 1978 through 2009. Petitioners noted in particular the decline in total starts from 1,046,100 in 2007, to 622,000 in 2008, and, finally, to 445,000 in 2009. Petitioners noted that ComEd's witnesses in the original proceeding cited future growth in the region as one of the reasons for the proposed new line. Petitioners urged the Commission to conduct further proceedings on whether, given the economic decline, as well as other considerations, the second segment of the proposed line, which would run from the Sandwald substation to ComEd's existing transmission line, was still advisable:

> "Another critically important factor that needs further evidence on remand is the extent to which the first segment of the Project has alleviated or satisfied ComEd's electric infrastructure needs in the study area. *** ComEd should be required to provide evidence of *** the system enhancements and other benefits it has provided, and whether due to the severe recession and the concomitant decline in projected load growth, as well as other relevant engineering factors (*e.g.*, installation of additional equipment at other neighboring substations), incurrence of the substantial additional cost for completion of the second segment at this time is justified and consistent with ComEd's obligations to provide reliable and adequate service at least cost."

¶ 16    Lastly, petitioners relied on considerations that did not appear to be new. First, petitioners referred to testimony in the original proceeding that the Village of Huntley was planning to widen Kreutzer Road. Petitioners asked the Commission to "revisit[ ]" the issue of the planned widening:

> "If ComEd were to build the line along the [s]outh side of Kreutzer Road within the 50 foot easement that *** it advocated and supported in the initial proceedings, the cost to move the poles and related facilities to accommodate a widening of Kreutzer Road (possibly in the very near future) should be considered as part of the cost of the Kreutzer Road route and would almost certainly make that route for the line cost[-]prohibitive compared to other viable routes. [Petitioners] note that in another transmission line proceeding, ComEd estimated it would cost $4.5 million (in 2002) dollars to move a 138kV transmission line covering 5,050 feet. *** There may have been differences in that proceeding making the cost comparison more complicated, but at least we have an indication of the order of magnitude of the cost of relocating poles and related equipment. More direct and accurate relocation cost projections could be developed in the remanded proceeding."

¶ 17    Second, petitioners asked the Commission to reconsider its prior denial of their motion to take notice of Kane County's designation of the Kreutzer House as a historic landmark.

¶ 18    ComEd subsequently submitted a revised legal description for the Kreutzer Road route, specifying that the route would run "ALONG KREUTZER ROAD WITHIN A 50 FOOT RIGHT-OF-WAY."

¶ 19    On April 15, 2011, the Commission approved the revised right-of-way. The Commission held that, in light of our decision in *Kreutzer I*, it had no discretion to grant petitioners' request for further evidentiary proceedings:

>    "The Commission's 2008 Order approved ComEd's request for a [certificate of public convenience and necessity] to construct Phase III of the Northwest Reliability Project, which included the route for the transmission line and eminent domain authority under [section 8-503 of the Act (220 ILCS 5/8-503 (West 2008))]. Nothing in the Appellate Court opinion or in this Order on Remand disturbs those finding[s], other than to address [the] proper width of the right-of-way along those portions of Kreutzer Road that make up part of the approved route for the line. The Appellate Court opinion was very clear as to the limited scope of the Commission's proceeding on remand. With respect to the proper width of the right-of-way, the Commission concludes that the evidentiary record demonstrates that ComEd's proposed 50-foot right-of-way adjacent to the south of the Kreutzer Road right-of-way is necessary to facilitate the construction of the transmission facilities. Meanwhile, no party has presented compelling evidence demonstrating that a 50-foot right-of-way is unreasonable."

¶ 20    Petitioners moved for rehearing, which the Commission denied. They filed this timely appeal.

¶ 21                              ANALYSIS

¶ 22    We first address the Commission's request that we reconsider our rejection of its jurisdictional challenge in *Kreutzer I*. The Commission argued there that we lacked jurisdiction because petitioners had not provided the Commission timely notice of their appeal to this court. We explained that notice to the Commission was not essential to our jurisdiction. See *Kreutzer I*, 404 Ill. App. 3d at 793-97. The Commission renews that argument, but admits that, in the present appeal, it indeed was served with timely notice. Nonetheless, the Commission claims that we may even now determine that we lacked jurisdiction over the first appeal and, *a fortiori*, lack jurisdiction over the present appeal. We may undertake that inquiry, the Commission claims, because "[our] prior decision through its remandment is an interlocutory order." The Commission does not explain how characterizing *Kreutzer I* as "interlocutory" benefits its position on appeal. The Commission does add some parenthetical remarks to the two citations it provides: *Trunek v. Industrial Comm'n*, 345 Ill. App. 3d 126 (2003), and *People v. Brazee*, 333 Ill. App. 3d 43 (2002) (hereinafter *Brazee II*, for reasons stated below). Of *Trunek*, the Commission says, "remand for further proceedings renders an order interlocutory," and of *Brazee II*, "[b]ecause of remand, later clarification order was interlocutory and subject to alteration when final appeal was taken." The Commission appears to be mixing two distinct senses of "interlocutory," as we will explain.

¶ 23    A reviewing court's determination that it has jurisdiction over an appeal becomes the law

of the case for successive appeals in the same proceeding. See *Anest v. Bailey*, 265 Ill. App. 3d 58, 63-64 (1994); *Hamilton v. Williams*, 237 Ill. App. 3d 765, 772-73 (1992). The law-of-the-case doctrine provides that questions decided in a previous appeal are binding on the trial court on remand as well as on the appellate court in a subsequent appeal. *Norris v. National Union Fire Insurance Co. of Pittsburgh*, 368 Ill. App. 3d 576, 580 (2006).

¶ 24    While an appeal is pending, however, a reviewing court owes no deference to rulings it made earlier in that same appeal. *Brazee II* involved just such a ruling. In *People v. Brazee*, 316 Ill. App. 3d 1230, 1237 (2000) (*Brazee I*), this court vacated the defendant's prison sentence and directed the trial court to sentence him to time served under the Juvenile Court Act of 1987 (705 ILCS 405/1-1 *et seq.* (West 1996)). On remand, the trial court adjusted the sentence accordingly, but the parties disputed whether the court should also vacate the defendant's criminal conviction and adjudicate him a delinquent minor. The trial court ruled that the defendant's criminal conviction would stand even though, at our direction, he was sentenced as a juvenile. *Brazee II*, 333 Ill. App. 3d at 45. On March 6, 2001, the defendant filed a timely notice of appeal, and, on March 17, 2001, the office of the State Appellate Defender (OSAD) was appointed to represent him. On March 12, 2001, however, an attorney from OSAD filed an emergency motion in this court to clarify the mandate in *Brazee I* as to whether the defendant should have been adjudicated a delinquent minor. The motion was filed under the docket number for *Brazee I*. On June 1, 2001, a panel of this court issued an order clarifying that the defendant's criminal conviction would stand. At the time, this court was unaware that the defendant had perfected an appeal in *Brazee II* raising essentially the same issue. *Id.* at 46, 50.

¶ 25    Subsequently, we issued our disposition in *Brazee II*, holding, after all, that the defendant should have been adjudicated a delinquent minor and that his criminal conviction was invalid. *Id.* at 49. We said: "Because this appeal was pending on June 1, 2001, when that order was entered, the order was interlocutory and subject to revision prior to entry of this court's final judgment." *Id.* at 50. We stated no standard of review, but also never hinted that we owed any deference to the June 1, 2001, determination.

¶ 26    In *Commonwealth Edison Co v. Illinois Commerce Comm'n*, 368 Ill. App. 3d 734 (2006), this court applied the same concept of "interlocutory" as in *Brazee II*. *Commonwealth Edison* is instructive here in two respects. First, it concerns a prior jurisdictional determination, such as the Commission challenges here. Second, it more clearly indicates that prior rulings made during the pendency of an appeal are reviewed *de novo*.

¶ 27    The consolidated appeals in *Commonwealth Edison* were transferred to this district from the First District Appellate Court. Prior to the transfer, the appellee filed motions to dismiss the appeals for lack of jurisdiction because the petitions for review were not timely. The First District transferred the cases without formally ruling on the motions to dismiss. Once the cases were in this court, the appellee renewed its jurisdictional challenges. We agreed with the appellants that the First District's transfer of the cases while the motions to dismiss were pending constituted an implied rejection of the jurisdictional challenges. *Id.* at 742. We disagreed with the appellants, however, that the First District's jurisdictional ruling was the law of the case and, thus, generally unassailable. "The law-of-the-case doctrine," we explained, "binds a court only where a court's prior order was final." *Id.*; see also *People v.*

*Patterson*, 154 Ill. 2d 414, 468 (1992). The denial of a motion to dismiss for lack of jurisdiction is not "final" but, rather, "interlocutory" because it "does not dispose of all of the controversy between the parties." *Commonwealth Edison*, 368 Ill. App. 3d at 742. "An interlocutory order may be modified or revised by [the original court or] a successor court at any time prior to final judgment." *Id.* Consistent with this reasoning, we showed no deference to the First District's jurisdictional determination.

¶ 28　　*Trunek*, the other case cited by the Commission, applied a different sense of "interlocutory," but for a different purpose. *Trunek* held generally that a judgment of the trial court reversing a decision of the Industrial Commission is "interlocutory and not appealable" if the court's judgment "remands the matter for further proceedings involving the resolution of questions of law or fact." *Trunek*, 345 Ill. App. 3d at 127. Our supreme court has applied this same criterion in determining whether an appellate court judgment is "final" and, thus, appealable. The court said in *Cory Corp. v. Fitzgerald*, 403 Ill. 409, 414-15 (1949):

> "In general, to be final and appealable, a judgment of the Appellate Court must terminate the litigation on the merits of the cause and determine the rights of the parties. [Citations.] Where, however, the Appellate Court remands a cause for further proceedings, it does not necessarily mean that the judgment is not a final one. If, upon remandment, the trial court has only to enter a judgment or decree in accordance with the directions of the reviewing court, or to conduct further proceedings on uncontroverted incidental matters, then, irrespective of the remanding clause in the judgment order, the judgment of the Appellate Court is final and reviewable. [Citations.] On the other hand, where a cause is remanded for a new trial or other further proceedings involving disputed questions of law or fact, the judgment of the Appellate Court is not of a final character. [Citations.] The ultimate question to be decided in each case is whether the judgment fully and finally disposes of the rights of the parties to the cause so that no material controverted issue remains to be determined."[2]

A judgment of the appellate court can be "final" and, hence, the law of the case, while also being "interlocutory" and not subject to higher review. A judgment can "dispose of all of the controversy between the parties" (*Commonwealth Edison*, 368 Ill. App. 3d at 742), adjudicating the merits of the issues before it, while also remanding the matter for further substantive proceedings.[3] A judgment that "dispose[s] of all of the controversy between the

---

[2]In more recent decades, it seems that the only cases in which reviewing courts have applied this criterion to test the finality of appellate court judgments have been appeals from administrative bodies. See, *e.g.*, *Wilkey v. Illinois Racing Board*, 96 Ill. 2d 245, 249 (1983); *Jelinek v. Retirement Board of the Firemen's Annuity & Benefit Fund*, 392 Ill. App. 3d 372, 378 (2009). We express no opinion on whether the *Cory Corp.* criterion applies to all appellate court judgments.

[3]The Commission's parenthetical description of *Brazee II* seems to suggest that this court's June 1, 2001, clarifying order was interlocutory because of the remand in *Brazee I*. This is incorrect. The remand (and resulting confusion) may have occasioned the order, but what made the order interlocutory was that it was entered during the pendency of the subsequent appeal, prior to the final judgment.

parties" (*id.*) will serve as the law of the case for subsequent appeals. For instance, while *Trunek* remanded the matter for further substantive proceedings, and in that sense the judgment was "interlocutory," *Trunek* would have stood as the law of the case as against any challenge in a subsequent appeal after remand. As *Kreutzer I* met the *Commonwealth Edison* criterion, it is the law of the case. This includes both the jurisdictional ruling and the decision on the merits.

¶ 29    Any suggestion by the Commission that our jurisdictional ruling in *Kreutzer I* is not the law of the case would be at odds with a position that the Commission takes elsewhere in its brief. We mean specifically the Commission's response to what it casts as petitioners' attempt to mount an untimely challenge to the Commission's original decision. The Commission notes that, in *Kreutzer I*, the sole issue that petitioners preserved for appellate review was whether the 175-foot easement was adequately described and had requisite evidentiary support. All other issues, the Commission claims, have been "long-waived" by petitioners.

¶ 30    As authority, the Commission cites *Independent Voters of Illinois v. Illinois Commerce Comm'n*, 189 Ill. App. 3d 761, 767 (1989), for the principle that "[t]he judgment of a reviewing court is *final upon all questions decided*, and if the cause is remanded, only such action may be taken on remand as conforms to the judgment of the reviewing court." (Emphasis added.) The Commission also quotes extensively from *Turner v. Commonwealth Edison Co.*, 63 Ill. App. 3d 693, 698 (1978), on the law-of-the-case doctrine:

> "*It is well settled that no question which was raised or which could have been raised in a prior appeal on the merits can be urged on a subsequent appeal*. [Citation.] *Where in the prior appeal, questions of law are presented and determined, such become the law of the case and are generally binding and will control in a subsequent appeal unless the facts presented in the subsequent proceedings are so substantially different as to require a different interpretation*. [Citations.] Courts will not permit parties to relitigate the merits of an issue once decided by an appellate court[;] the proper remedy for a dissatisfied party is by petition for rehearing or by petition for leave to appeal to the Illinois Supreme Court. [Citation.] Similarly, where a question was open to consideration in a prior appeal and it could have been presented but was not, the question will be deemed to be waived. [Citation.] A second appeal brings up nothing except proceedings subsequent to the remandment[,] and a party will not be allowed to present his case for review piecemeal, one part each time. [Citation.]" (Emphases added.)

*Kreutzer I*, of course, could not be the law of the case unless it was "final" within the meaning of *Commonwealth Edison* and *Brazee II*. Thus, the Commission appears to be of two minds regarding the finality of *Kreutzer I*. Perhaps the Commission means that our decision on the merits in *Kreutzer I* (which petitioners attack) was "final" but that our jurisdictional ruling (which the Commission attacks) was not "final." The Commission offers no grounds for such a distinction, and we cannot conceive of any.

¶ 31    Having determined that the Commission's attack on our jurisdictional ruling in *Kreutzer I* falls under the law-of-the-case doctrine, we note that the Commission offers no argument under that doctrine. In fact, as we observed, the Commission's argument is hardly

more than a bare assertion that *Kreutzer I* was "interlocutory." "[T]here are two recognized exceptions to the *** doctrine: (1) when a higher reviewing court, subsequent to the lower court's decision, makes a contrary ruling on the same issue; and (2) when a reviewing court finds that its prior decision was palpably erroneous." *People ex rel. Madigan v. Illinois Commerce Comm'n*, 2012 IL App (2d) 100024, ¶ 35. Only the "palpably erroneous" exception is potentially applicable here. We have reviewed the Commission's arguments against our ruling in *Kreutzer I* and find no error.

¶ 32    We turn to petitioners' arguments on appeal. They first contend that our judgment in *Kreutzer I* effectively reversed the entirety of the Commission's October 2008 order approving the Kreutzer Road route, and so the Commission received the case on remand as if no hearing had taken place and no evidence had been received. Petitioners conclude that, since the Commission refused to receive any additional evidence on remand, its April 15, 2011, order approving ComEd's revised right-of-way lacked any support and, therefore, must be reversed.

¶ 33    As authority for their contention that *Kreutzer I* reversed the whole of the Commission's order, petitioners refer to the following language from *Kinney v. Lindgren*, 373 Ill. 415, 420 (1940):

> "*When a decree is reversed and the cause is remanded without specific directions, the judgment of the court below is entirely abrogated, and the cause stands there as if no trial had occurred*. The trial court then has the same power over the record as it had before its judgment or decree was rendered. It may permit amendments to the pleadings or the introduction of further evidence, so long as such steps are not inconsistent with the principles announced by the court of review, and do not introduce grounds which did not exist at the original hearing. [Citation.] When a judgment is reversed and the cause remanded with directions to proceed in conformity to the decision then filed, and it appears from the opinion that the grounds of reversal are of a character to be obviated by amendment of the pleadings or by the introduction of additional evidence, the trial court is bound to permit the cause to be redocketed and to permit such amendments and the introduction of further evidence on the new hearing." (Emphasis added.)

¶ 34    We disagree with the premise that our judgment in *Kreutzer I* reversed the Commission's judgment in its entirety. *Kinney* seems to suggest that, where "specific directions" are lacking, it is presumed that the lower tribunal's entire judgment is abrogated. In *Town of Kaneville v. Meredith*, 361 Ill. 556, 563 (1935), however, the supreme court said:

> "If the cause has been remanded, the court to which it is remanded can take only such proceedings as conform to the judgment of the appellate tribunal. If specific directions are given, the court can do nothing but carry out such directions; *if not given, it must be determined from the nature of the case what further proceedings would be proper and not inconsistent with the opinion*." (Emphasis added.)

These comments suggest that, if specific directions are lacking, the body of the appellate court's judgment must be examined to determine the court's intent for the proceedings on remand. Several decades later, in *Clemons v. Mechanical Devices Co.*, 202 Ill. 2d 344, 353 (2002), the supreme court endorsed *Meredith*'s approach:

"[I]t is not required that a reviewing court state specific directions in an order reversing a judgment and remanding a cause. In such a case, it is then the duty of the court to which the cause is remanded to examine the reviewing court's opinion and to proceed in conformity with the views expressed in it. [Citations.] '[T]hen, of course, the content of the opinion is significant.' *PSL Realty Co. v. Granite Investment Co.*, 86 Ill. 2d 291, 308 (1981)."

We follow *Clemons*, as it appears to be the supreme court's latest pronouncement on the matter of interpreting a reviewing court's judgment.

¶ 35     Applying the principles of *Meredith* as restated in *Clemons*, we determine that *Kreutzer I* did not abrogate the Commission's entire judgment, because petitioners challenged only a portion of the judgment and that portion was distinct from the remainder of the judgment. We were careful in *Kreutzer I* to identify precisely which of the several arguments brought by petitioners were properly preserved for review. We determined that, because they did not raise it before the Commission on rehearing, petitioners forfeited for appellate review the issue of whether the Kreutzer Road route met the criteria of sections 8-406(b) and (d) of the Act, including whether the route was the "least-cost" option of providing electricity. *Kreutzer I*, 404 Ill. App. 3d at 809. We then concluded that our review was limited to the following two questions: (1) whether the Commission's order granting ComEd an easement that would run "along Kreutzer Road within 175 feet of the centerline of the road right-of-way" adequately described the property to be acquired; and (2) whether the evidence justified whatever quantity of property ComEd sought. In other words, the issue on appeal was not whether the Kreutzer Road route was the best candidate under sections 8-406(b) and (d), but whether ComEd had properly specified and proved the amount of property it needed along Kreutzer Road. We determined that both the description of the easement and the underlying proof were inadequate, and we reversed. We remanded "for further proceedings *** governed by the principles set forth above." *Id.* at 815. The only "principles" we articulated in our analysis were those governing the specificity and evidentiary requirements for a utility easement. Hence, our remand directive contemplated no proceedings beyond those pertaining to the easement issue. Our reversal on the easement issue could be construed as extending to the route issue only if the matters were interrelated, which they were not.

¶ 36     Petitioners, we conclude, have not demonstrated that our decision in *Kreutzer I* restored the proceedings before the Commission as if no hearing had taken place and no evidence received. Our reversal, rather, was partial, encompassing only the issue of the easement along Kreutzer Road. Thus, contrary to petitioners' suggestion, all evidence that was introduced at the prior proceeding was still before the Commission when, in April 2011, it entered its judgment on remand.

¶ 37     Petitioners' next set of arguments concerns whether the Kreutzer Road route is the best of the candidate routes under the criteria of sections 8-406(b) and (d) of the Act. In *Kreutzer I*, petitioners failed to preserve any argument regarding the route issue. *Id.* at 808. Petitioners attempt now to revisit the issue, making several points. The first point is set forth in an argument subsection entitled:

"The Effect of the Commission's Response to This Court's Prior Decision Was to

Render Even More Speculative Than Before The Commission's Decision That the Kreutzer Road Route Was the Least-Cost Alternative."

The first line of this subsection reads: "Understanding of this issue requires first a review of the evidence presented on the hearing *and then an explication of how this court's decision has affected that issue*." (Emphasis added.) In what follows, however, petitioners never attempt to show how *Kreutzer I* affected the "least cost" issue in this case or "least cost" issues generally. Rather, they simply recapitulate the evidence in the original proceeding and argue that it was insufficient. Petitioners cannot reargue whether the Kreutzer Road route was the appropriate route on the evidentiary record as it stood in the prior proceeding. "Generally, the law of the case doctrine bars relitigation of an issue previously decided in the same case." *Krautsack v. Anderson*, 223 Ill. 2d 541, 552 (2006). "Courts will not permit parties to relitigate the merits of an issue once decided by an appellate court[;] the proper remedy for a dissatisfied party is by petition for rehearing or by petition for leave to appeal to the Illinois Supreme Court." *Turner*, 63 Ill. App. 3d at 698. "Similarly, where a question was open to consideration in a prior appeal and it could have been presented but was not, the question will be deemed to be waived." *Id.* (citing *Kazubowski v. Kazubowski*, 45 Ill. 2d 405, 413 (1970)). "A second appeal brings up nothing except proceedings subsequent to the remandment[,] and a party will not be allowed to present his case for review piecemeal, one part each time." *Id*; see also *Tribune Co. v. Emery Motor Livery Co.*, 338 Ill. 537, 541 (1929). In this part of their argument, however, petitioners allege no error by the Commission in the proceedings following remand.

¶ 38     Next, petitioners contend that the Commission erred by refusing to consider evidence that, "[i]n the *** three-year-plus interval [since the Commission's October 2008] order, the economy has progressively declined." Petitioners point to two sources for this evidence. The first is a document entitled, "U.S. Census Bureau News–Joint Release–U.S. Department of Housing and Urban Development" (HUD report), which was introduced by Huntley in the first proceeding before the Commission. There is no indication, however, that this document was resubmitted by petitioners on remand. Even if they did resubmit the HUD report, the Commission obviously would have been correct to conclude that the document, dated January 17, 2008, did not show any change in circumstances since the Commission's *October 2008* order. Petitioners have established no error on this point.

¶ 39     The other document is the NAHB report, which shows a 58% nationwide decrease in housing starts from 2007 to 2009. Unlike the HUD report, it is clear that the NAHB report was submitted to the Commission on remand. Petitioners argue that the Commission "should have taken judicial notice of [the data] and conducted a hearing on whether the new line is now needed in the first instance." Here again we emphasize that petitioners failed to preserve on appeal in *Kreutzer I* any argument that the Kreutzer Road route did not meet the criteria of section 8-406. The only argument preserved in *Kreutzer I* concerned the size of the easement along Kreutzer Road, specifically, whether the 175-foot easement was adequately described and also supported by evidence. Our reversal on that issue did not implicate the analytically distinct issue of the appropriateness of the route under section 8-406. Given the forfeiture, we affirmed that portion of the Commission's order containing its findings and ruling under section 8-406.

¶ 40 In the proceedings following *Kreutzer I*, the Commission concluded that our remand was of "limited scope" and precluded it from revisiting the section 8-406 issue. We need not decide whether *Kreutzer I* left the Commission any discretion to take further evidence on the section 8-406 issue, because petitioners have not properly developed any argument that the Commission erred. On why the NAHB report impacts the Commission's analysis, they write:

> "The fact in this matter which has changed dramatically is the national economy, in particular the housing-construction segment of the economy, the continued growth of which was the fundamental assumption on which ComEd premised the need for the construction project in the first instance.
>
> This proceeding began in 2007, and the original hearing took place in 2008. In the ensuing three-year-plus interval, the economy has progressively deteriorated. ComEd and the [C]ommission staff premised the entire proceeding on an assumption that the area proposed to be served by the new transmission line had been growing rapidly and would continue to do so at a rate of seven per-cent compounded annually."

Petitioners provide no record citations for any of these assertions. They make similar representations in their reply brief, but again without citations to the record. Therefore, they have forfeited any argument that the Commission erred in refusing to reopen the evidentiary record to explore changed economic conditions. See Ill. S. Ct. R. 341(h)(7) (eff. July 1, 2008) ("[a]rgument" shall "contain the contentions of the appellant and the reasons therefor, with citation of the authorities and the pages of the record relied on," and "[p]oints not argued are waived").

¶ 41 Petitioners alternatively ask us to take judicial notice of the recent economic trends. We decline, as petitioners, again, have failed to develop an argument as to how those trends would impact a section 8-406 analysis.

¶ 42 Petitioners' final argument on appeal is that the Commission erred in its express refusal in the first proceeding, and implied refusal on remand, to consider the Kane County ordinance designating the Kreutzer House as a historic landmark. In *Kreutzer I*, we held that petitioners forfeited this issue by failing to preserve it in their motion to reconsider before the Commission. See *Kreutzer I*, 404 Ill. App. 3d at 809. That holding is the law of the case. See *Turner*, 63 Ill. App. 3d at 698. Petitioners, however, invoke the exception to the law-of-the-case doctrine for prior decisions that were "palpably erroneous." *People v. Sutton*, 233 Ill. 2d 89, 98 (2009). Petitioners fail, however, to make a substantive argument on the relevancy of the ordinance. Their discussion begins:

> "ComEd and the [C]ommission will undoubtedly argue that this court's prior decision constitutes the 'law of the case' and that one of the matters insulated from further review is whether [petitioners] preserved the effect of the Kane County ordinance designating the [Kreutzer House] as a historic landmark. This court held that [petitioners] had 'forfeited' argument on this point by not being specific enough in their reference to it in the petition for review before the [C]ommission."

Petitioners devote the remainder of their argument to citing case law and statutes authorizing us to correct "palpably erroneous" errors and to take judicial notice of ordinances. Petitioners neglect, however, to attempt any argument as to the impact of the ordinance on an analysis

of candidate routes under section 8-406.

¶ 43                               CONCLUSION
¶ 44           For the foregoing reasons, we affirm the decision of the Commission.

¶ 45           Affirmed.